In the Matter of ANONYMOUS.

Nos. 49S00–9305–DI–566, 49S00–9303–DI–325, 49S00–9303–DI–326 and 49S00–9303–DI–327.

Supreme Court of Indiana.

March 16, 1994.

DISCIPLINARY ACTION

PER CURIAM.

This opinion relates to four Respondents who were charged in separate disciplinary complaints with violations of the *Rules of Professional Conduct for Attorneys at Law.* All charges stem from communications the Respondents made to certain individuals. As all complaints allege violation of Ind.Professional Conduct Rule 7.3(c), these matters are consolidated in this opinion.

In each case, the Respondents and the Disciplinary Commission tendered for this Court's approval a Statement of Circumstances and Conditional Agreement for Discipline pursuant to Ind.Admission and Discipline Rule 23, Section 11(d). All Respondents tendered affidavits pursuant to Admis.Disc.R. 23, Section 17(a). This Court approved the tendered agreements and accepted the sanctions contained therein, those being private reprimands. Given the confidential nature of the sanctions, we will set out the facts and circumstances of each case without reference to the identities of the Respondents.

As set forth in the first tendered agreement, during January, 1993, Respondent sent the following letter to certain individuals:

Dear [Recipient]:

Court records show that your home is in foreclosure. THIS LETTER IS TO ADVISE YOU THAT THERE IS A FEDERAL LAW THAT CAN STOP THE FORECLOSURE AND SHERIFF'S SALE OF YOUR HOME, if you qualify, and *force* your mortgage company to give you up to 3 years to catch up on your missed mortgage payments. *If you have other debts, this law can lower your monthly payments on these other debts which would free up more of your income to make it easier for you to catch up on your house payments.*

If you would like to save your home, and feel you now have the monthly income sufficient to start making regular monthly mortgage payments to your mortgage company, plus an additional amount to catch you up on missed payments over an approximate 3 year period (as opposed to having to pay your mortgage company all missed payments at once in one lump sum as your mortgage company now insists), do not delay—call our office now for more information on how we can help you save your home. This is not something that depends on your mortgage company accepting your repayment plan. Should you qualify, your mortgage company will be *forced* to accept your Court approved repayment plan, and your home will be safe unless you fail to make your Court approved catch-up payments every month. If you do nothing, your home will be sold at Sheriff's sale and it will then be too late for us to help you with this problem.

If you don't have your own lawyer, feel free to telephone this office, and we will try to answer your questions. There is no charge for this.

If you already have a lawyer, then please disregard this letter.

Nowhere did the letter contain the words "advertising material." Respondent did not file a copy of the letter with the Indiana Supreme Court Disciplinary Commission at or prior to the time it was sent to the recipients.

As set forth in the second tendered agreement,[1] the Respondents, partners in law practice, contracted with Audio Services of Dallas, Texas, to have certain audio solicitation messages placed in the "Touch Four" information services, made a part of the 1991–92 volume of the Ameritech Indianapolis Yellow Pages. "Touch Four" allowed readers to access pre-recorded messages on a variety of topics by dialing an access number and a four-digit code corresponding to a desired topic. Respondents contracted to provide recorded messages under several legal topic areas, including one listed in the

---

1. As the factual allegations contained in the complaints filed against three of the Respondents, partners in a law practice, are identical, their cases were consolidated for the pre-hearing and hearing stages of the disciplinary process. These Respondents have accepted a consolidated Statement of Circumstances and Conditional Agreement for Discipline.

Personal Injury category, entitled "Dealing With Insurance." It stated:

> This message comes to you from the law firm of [Respondents]. We want you to know that you don't have to be alone in the legal system, especially when you are concerned and hurting because of a personal injury problem. For a brief consultation, please stay on the line after this helpful message.

> If you are involved in an automobile accident and there is damage to the cars but no one is hurt, you should talk to an insurance claims adjuster since that is the only way to obtain payment quickly from the insurance company for the car damage. On the other hand, if, and this is a big if, someone is injured in the accident, you should hardly ever give a statement to an adjuster since it could be used against you so easily in court. Adjusters are masterful at letting you dig your own grave by offering too much information on how the accident happened and whose fault you think it was. If someone, anyone, was hurt in the accident do not give a statement to any insurance claims adjuster who calls you.

> [Respondents' firm] wants you to know that you don't have to be alone in the legal system. If you would like to speak to one of our staff between the hours of 8:00 A.M. and 5:00 P.M. for a free telephone consultation, please press 4 on your touch-tone phone. To leave a message after office hours, please call [number] ...

The message did not contain any disclosure that it was advertising material.

Professional Conduct Rule 7.3(c) provides that:

> Every written or recorded communication from a lawyer soliciting professional employment from a prospective client potentially in need of legal services in a particular matter, and with whom the lawyer has no family or prior professional relationship, shall include the words "Advertising Mate-

rial" conspicuously placed both on the face of any outside envelope and at the beginning of any written communication, and at both the beginning and ending of any recorded communication. A copy of each such communication shall be filed with the Indiana Supreme Court Disciplinary Commission at or prior to its dissemination to the prospective client.[2]

Clearly, the recipients of the form letter were "prospective client[s] potentially in need of legal services," as they were targeted based on court records indicating threatened foreclosure. We find that Touch-Four callers seeking legal advice in relation to specific matters fit that description as well, as such persons likely want information to evaluate a specific legal problem they might have. Therefore, we find that Respondents violated Prof.Cond.R. 7.3(c) by failing to label advertising material as such, and by failing to file the written advertising material with the Disciplinary Commission prior to mailing those communications to prospective clients. Further, the Respondents responsible for the recorded message violated Prof. Cond.R. 7.1(b) and (e) by using a form of public communication containing a misleading or deceptive statement and by failing to identify that message as an advertisement.

In our assessment of sanction, we examine several factors, including the nature of the misconduct at issue and factors in aggravation and mitigation. See *In re Clanin* (1993), Ind., 619 N.E.2d 269. We are confronted here with sloppy preparation of advertising materials and a distinct lack of familiarity with applicable *Rules of Professional Conduct* on the part of the Respondents. By way of mitigation, we note Respondents had the words "Advertising Material" added to the recorded message several days after learning of the claim of misconduct filed against them. The Respondent responsible for the written solicitation apparently inadvertently failed to properly label the material

---

**2.** The United States Supreme Court has held that, although attorney advertising is commercial speech protected by the Federal Constitution's First Amendment, states may regulate abuses and minimize mistakes through means less restrictive and more precise than a categorical ban

of such speech. *Shapero v. Kentucky Bar Association*, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) (striking down Kentucky's ban against targeted mailing by attorneys for pecuniary gain).

and file it with the Commission. We further note that the letter advised readers to disregard its content if they were already represented by counsel, in an attempt to ensure non-interference with existing attorney-client relationships.

More generally, none of the Respondents have prior disciplinary records, and all cooperated fully in the investigation and resolution of these actions. Although such factors weigh in the Respondents' favor, they in no way excuse their misconduct. Nonetheless, we accepted the agreed sanctions, those being private reprimands, with the caveat that we did so largely based on the unique circumstances and factors in mitigation present in these cases. In the absence of such circumstances, this Court might well have been inclined to impose a period of suspension for the misconduct at issue.

Costs of these proceedings are assessed against the Respondents.